Accordingly the decison of the board is reversed and the cause is remanded.

*Reversed.*

---

ONO *v.* UNITED STATES (No. 2113).[1]

EVIDENCE—PRESUMPTION FAVORS OFFICIAL ACTION—JUDICIAL NOTICE—LOOFAH INSOLES.

> Loofah insoles were classified by the collector under paragraph 256, tariff act of 1913, as " articles of wearing apparel * * *, composed of cotton or other vegetable fiber." The protest claimed them to be dutiable as non-enumerated manufactured articles under paragraph 385, as manufactures of wood under paragraph 176, or as·manufactures of grass or straw under paragraph 368. The Board of United States General Appra'sers overruled the protest. The insoles were conceded to be wearing apparel. The evidence is confined to a sample and a stipulation that " it is a natural fibrous material taken from the interior of the gourd; that nothing has been done to it except taking that fiber out and pressing it into this condition." Upon this evidence the court is unable to decide that the merchandise is not composed of vegetable fiber other than cotton, and so the decision of the Board of United States General Appraisers is affirmed. The question whether or not the language " other vegetable fiber " includes only such as may be used in sewing, spinning, weaving, or similar processes is reserved because not presented by the record.

United States Court of Customs Appeals, November 21, 1921.

APPEAL from Board of United States General Appraisers, Abstract 44138.

[Affirmed.]

*Frank L. Lawrence* for appellant.

*William W. Hoppin,* Assistant Attorney General (*Charles D. Lawrence* and *Samuel Isenschmid,* special attorneys, of counsel), for the United States.

---

[1] T. D. 38949.

[Oral argument Oct. 27, 1921, by Mr. Charles D. Lawrence.]

Before DE VRIES, Presiding Judge, and SMITH, BARBER, and MARTIN, Associate Judges.

MARTIN, Judge, delivered the opinion of the court:

The importations involved in this case consist of certain insoles for shoes, composed in chief value of loofah. Loofah is the natural pith of a gourd called snake gourd; it is simply pressed into a thin mat having the shape of a shoe sole in order to fit it for its present use.

The insoles were classified for duty by the collector as articles of wearing apparel composed of " cotton or other vegetable fiber," and were assessed with duty under that enumeration at the rate of 30 per cent ad valorem under paragraph 256 of the tariff act of 1913.

The importer protested, claiming that the articles were dutiable at the rate of 15 per cent ad valorem as nonenumerated manufactured articles under paragraph 385 of the act, or alternatively at the rate of 15 per cent ad valorem as manufactures of wood under paragraph 176 of the act, or at the rate of 25 per cent ad valorem as manufactures of grass or straw under paragraph 368 of the act.

The Board of General Appraisers overruled the protest. An application for a rehearing was filed by the importer and was denied, whereupon the importer appealed.

The following is a copy of paragraph 256 above cited, under which the assessment was made:

256. Clothing, ready-made, and articles of wearing apparel of every description, composed of cotton or other vegetable fiber, or of which cotton or other vegetable fiber is the component material of chief value, or of cotton or other vegetable fiber and india rubber, made up or manufactured, wholly or in part, by the tailor, seamstress, or manufacturer, and not otherwise specially provided for in this section, 30 per centum ad valorem; shirt collars and cuffs of cotton, not specially provided for in this section, 30 per centum ad valorem.

The assessment of the insoles under the foregoing paragraph implies that the collector found, first, that they were articles of wearing apparel, and second, that the loofah composing them is a vegetable fiber within the purview of the paragraph.

The importer concedes that the insoles are articles of wearing apparel, but denies that loofah is a vegetable fiber under the paragraph.

The only issue in the case, therefore, is whether the loofah in question is a vegetable fiber within the intendment of paragraph 256, supra.

The record in the case is meager. The evidence before the board consisted simply of a sample of the imported articles, together with a stipulation of counsel, reading as follows:

Mr. ISENSCHMID. I will stipulate in this case that the so-called material loofah is also called snake gourd, and that it is a natural vegetable fibrous ma-

terial from the interior of the gourd; that nothing has been done to it except taking that fiber out and pressing it into this condition; and it is also stipulated that chief value is in the so-called loofah or snake gourd.

Mr. LAWRENCE. I agree to that.

We must accordingly derive our knowledge of loofah from an examination of the sample, and from the stipulation above copied, aided also by such information as may come within the range of so-called common knowledge. It is needless to say that the words in question must be understood according to their common or ordinary signification.

An inspection of the sample discloses, consistently with the stipulation, that the loofah of which it is chiefly composed is a natural vegetable material consisting of an indeterminate number of slender woody stems, irregularly reticulated and intermingled, and pressed into a thin mat having the shape of a shoe sole.

The following definitions of the word " loofah," which seems also to be spelled luffa, are taken from standard authorities:

Oxford Dictionary—

Loofah. The fibrous substance of the pod of the plant *Luffa aegypteaca,* used as a sponge or flesh brush.

Standard Dictionary—

Luffa. 1. A genus of Old World tropical herbs of the family of *cucurbitaceæ,* with the male flowers in racemes and the female solitary. The ovate or oblong fruit is fibrous within, and one species *L. egyptiaca,* furnishes the well-known dishcloth gourd, which is also used in making women's hats, the loofah. See under sponge.

Same authority—

— s. — gourd. A tropical plant (*Luffa cylindrica*) or its fruit, a long striped gourd; so called because when the latter is fully ripe it is filled with dry netted fibers which are used in Turkish baths as a rubber sponge or towel. It is found wild and cultivated in all parts of India.

Encyclopedia Americana (1919)—

Loofah, Egyptian, the fibrous portion of the fruit of one or two species of the genus Luffa of the gourd family, sold for use as a bath sponge or flesh-rubber. There are about 10 species of the genus known, but the " towel-gourd," as this bath sponge is sometimes called, appears to be obtained chiefly from *L. aegyptiaca.* In the West Indies the fruit of the *L. acutangula* yields a similar network of fibers, and is there used as a sponge or dishcloth and worked up into baskets and small ornamental articles.

New International Encyclopaedia (1917)—

Gourd. * * *. The Luffa (vegetable sponge) or dishcloth gourd (*Luffa cylindrica*) has recently come into prominence in America. The young fruit is edible and the fibrous interior of the dried fruit, when properly prepared, is used as a bath sponge. It also makes a durable dishcloth.

Since the question at issue is whether the material thus described is a vegetable fiber under the act, the following definitions of that term are here copied:

Standard Dictionary (1916)—

Fiber, fibre.

1. A fine filament; a slender or threadlike component of a substance, as of wood, muscle, connective, tissue, or spun glass; an individual filament, as of wool or cotton.

2. A structure composed of filaments. Especially: (1) Any substance that may be separated into threads for spinning, weaving, etc.; as, woody *fiber;* the *fiber* of hemp, flax, wool; muscular *fiber.* (2) A lengthened bast-cell. (3) A filamentous root; also, a rootlet.

The importer contends that loofah does not answer to the terms of the foregoing general definition. Furthermòre, he claims that since the statutory phrase is " cotton or other vegetable fiber," it should be understood according to the rule of ejusdem generis that the provision includes only such vegetable fibers as may be used like cotton in sewing, spinning, weaving, or some other comparable process. And he contends that loofah is incapable of such a use.

Our immediate difficulty with the case, however, is that the present record is so meager that we are not able to pass intelligently upon the question thus presented.

The collector, by virtue of the assessment, constructively held that the loofah in question was a vegetable fiber under paragraph 256, supra. The burden was thereby cast upon the importer to overcome that finding by sufficient adverse proof concerning the nature and character of the article. The only evidence, however, which was submitted to the board by the importer was the stipulation aforesaid, which described the material as " a natural vegetable fibrous material " taken from the interior of the snake gourd, also calling it " that fiber," and gave no other facts concerning its character or use. In addition to this the sample was before the board.

The board having overruled the protest, the importer appeals upon the foregoing record for a reversal of the decision. And we can simply repeat that in our opinion the record is not sufficient to sustain the appeal. The stipulation upon which the record rests is not inconsistent with the finding of the board, nor are the definitions and descriptions above copied from the dictionaries and encyclopedias. Our only other source of information, as above stated, is the sample of the merchandise; and we do not feel that this, taken alone, furnishes a sufficient ground upon which to base a finding by the court upon this appeal. We therefore affirm the decision of the board, being constrained thereto solely as aforesaid by a want of proof upon this subject in the record.

So far as we are able to find, the board has published but three decisions upon the subject of loofah preceding the present ones.

In T. D. 15411—G. A. 2805, in a case under the tariff act of 1890, involving crude loofah, the board observed that the article was more

like moss than fibrous vegetable substances, but no decision was entered because of defects in the protest.

In T. D. 16479—G. A. 3232, under the tariff act of 1894, the board held that certain hats "composed of the interior netted fibers of loof (luffa agyphona)" were dutiable as articles of wearing apparel composed of vegetable fibers, under paragraph 258 of the act.

In T. D. 24962—G. A. 5559, under the tariff act of 1897, crude loofah was held to be free of duty under the free list enumeration of "moss, seaweeds, and vegetable substances, crude or unmanufactured," not otherwise provided for. The decision contained no reference to that just above referred to.

In so far as we are able to find, the material in question has not been specifically passed upon in any decision of this court or other courts.

In accordance with the conclusions above indicated the decision of the board is *affirmed.*